UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case Number 16-20293

v.                                              Honorable David M. Lawson

MARC EDWARD SCHOLTZ,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Marc Scholtz has filed a renewed motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, due to health risks posed by the novel coronavirus pandemic. The Court denied a previous motion because Scholtz did not exhaust his administrative remedies within the Bureau of Prisons (BOP), a necessary prerequisite for seeking compassionate release. The government takes issue with Scholtz's exhaustion efforts again this time, but there is no merit to that argument. The government also argues that Scholtz has not demonstrated that extraordinary circumstances justify immediate release, he would be a danger to the community, and the factors in 18 U.S.C. § 3553(a) weigh strongly against release. Notably, the defendant's medical records indicate that he previously was diagnosed by laboratory tests as having an infection of the coronavirus and was placed in isolation. Available medical records indicate that his symptoms were mild and he recovered, although the defendant disagrees. The BOP is monitoring his condition closely and has prescribed him various medications, and the facility in which Scholtz is incarcerated has only two other active cases among inmates. The defendant has not shown that he is at a heightened risk of severe complications should he re-contract COVID-19 or that the BOP medical staff is incapable

of treating his condition.  Therefore, he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires.  His motion will be denied.

I.

In November 2017, Scholtz pleaded guilty to conspiring to distribute over a kilogram of heroin, fentanyl, and acetyl fentanyl.  He was on probation for a state conviction of possessing heroin and cocaine when he and Tyrone Smith Jr. regularly sold heroin, fentanyl, and acetyl fentanyl to numerous customers on the west side of Detroit from January 2015 to April 2016.  The Court sentenced Scholtz on March 1, 2018 to a 168-month prison term.  Scholtz currently is confined by the Bureau of Prisons (BOP) at FCI Jesup, a medium-security prison in Georgia.  His projected release date is July 1, 2029.  Scholtz has served about 43 months of his 168-month sentence.

On May 26, 2020, Scholtz filed a motion for compassionate release due to the health risks posed by the coronavirus pandemic.  The Court denied that motion without prejudice because he never sought relief from the prison before seeking judicial intervention.  On July 7, 2020, Scholtz submitted a request to the warden of FCI Jessup seeking compassionate release "due to the pandemic."  He submitted another request for compassionate release to the warden of FCI Jessup on July 12, 2020.  Scholtz followed up with FCI Jessup again on July 24, 2020, requesting a reduction in his sentence.  The warden at FCI Jessup denied Scholtz's request for compassionate release on August 10, 2020.  Scholtz's attorney then filed a renewed motion for compassionate release on September 2, 2020.  The government responded, contesting all aspects of the motion.

FCI Jesup, where Scholtz is held now, currently houses 873 inmates, two of which have active cases of COVID-19.  *COVID-19*, Bureau of Prisons (Oct. 15, 2020), https://www.bop.gov/coronavirus/.  Nineteen staff members have active cases reported.  To date,

242 other inmates and 3 other staff members contracted COVID-19 and recovered. One inmate has died.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Scholtz relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of

law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

A.

The government does not take issue with the timing of Scholtz's renewed motion filed in this Court in relation to the date he presented his request to the warden. Instead, the government argues that the request mentions only the issue of the pandemic, and it believes that Scholtz has presented different grounds to the Court in support of his request here. Scholtz's request to the warden cites the statute ("section 3582(c)(2) of Title 18 of the United States Code") and asks specifically for "compassionate release due to the pandemic." The government states in its brief, however, that "Sixth Circuit law confirms that § 3582(c)(1)(A) requires issue-specific exhaustion." That statement amounts to a misrepresentation of the law and an ethical breach.

First, the government attorney assigned to this case communicated to defense counsel his agreement that the defendant exhausted his administrative remedies on July 24 and could file his motion 30 days thereafter.

Second, no Sixth Circuit case has held that the compassionate relief statute requires issue exhaustion. Instead, federal courts confronted with the argument now raised by the government generally have been skeptical of the notion that the statute imposes any requirement of "issue exhaustion" on requests for compassionate release, or even that a prisoner explicitly must mention the pandemic as a basis of his administrative request, or else submit and exhaust a fresh request on that ground — and wait yet another 30 days — before seeking judicial review. *United States v. Garner*, No. 14-13, 2020 WL 3632482, at *3 & n.2 (S.D. Tex. July 3, 2020) ("This question of 'issue exhaustion' has not been addressed by the Fifth Circuit Court of Appeals, and it may well

be applicable in certain situations.  However, the Court is not persuaded that it applies in this case, primarily for the reasoning offered by the Government elsewhere in its response: COVID-19 does not constitute an independent basis for . . . compassionate release.") (collecting cases); *see also Miller v. United States*, No. 16-20222, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) ("[T]he Government argues that Miller's exhaustion should not be honored, because he did not specify requesting release due to the COVID-19 outbreak.  The Court finds this argument to be unfounded. Miller, then and now, seeks release due to his myriad of serious health conditions.  The COVID-19 pandemic merely accentuates his meritorious claims for release.").

Here, the statutory ground for the request has not changed from when it first was submitted; the defendant seeks now, as he did at the administrative level, release based on "extraordinary and compelling circumstances," under the authority of 18 U.S.C. § 3582(c).  He tied his request to the pandemic, and it was well known to prison authorities that he had tested positive for COVID-19 and displayed symptoms.  He now expands on the factual basis for his request, but the underlying authority and ground for the relief sought has not changed, and it would be inappropriate under the circumstances to impose any further exhaustion requirement, which in any event is not mandated in any plain terms of the statute.  *See Garner*, No. 14-13, 2020 WL 3632482, at *3 (S.D. Tex. July 3, 2020) ("Defendant has not changed the underlying basis of his request for . . . compassionate release by this motion; to the contrary, he argues that COVID-19 renders him even more medically vulnerable than before.  In short, Defendant argues that the COVID-19 pandemic increases his already-existing medical vulnerability, which he has already exhausted.").  The BOP certainly well knew, and now knows, about the pandemic and the risks to inmates, as its published reports and directives evidence.  It has had more than ample time to act on the defendant's request, which it denied after having before it all of the pertinent information about both the defendant and

the circumstances that pose risks to his health. The denial did not mention the defendant's health or medical condition whatsoever. As one district court aptly observed:

> The statute does not require issue exhaustion as argued by the United States and even if the Court was inclined to impose that requirement, it would be futile. The Court is frustrated by the fact that the warden has apparently ignored the first request. There is nothing in the record to suggest a second request by Defendant would be treated in any other way. By ignoring these requests, the warden is inviting the Court's involvement. This Court will accept that invitation. The COVID-19 pandemic requires action, and the Court is not willing to wait.

*United States v. Dillard*, No. 15-00170, 2020 WL 2564638, at *2 (D. Idaho Apr. 27, 2020).

The defendant sufficiently presented his request for release to prison authorities, and he has waited more than 30 days for a favorable response, which was rejected. That is sufficient to satisfy the exhaustion requirement.

B.

The government offers several other reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Scholtz has invoked 3582(c)(1)(A)(i), which contains no such requirement. However, the Court need not address that issue because, despite Scholtz's COVID-19 diagnosis, his medical records do not establish the extraordinary and compelling reasons that section 3582(c)(1)(A)(i) requires.

Addressing this second requirement, Scholtz argues that compassionate release is warranted because he suffers "from a serious physical or medical condition that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Scholtz is a 30-year-old African-American man who used to smoke. His medical records do not reflect any other health conditions or abnormalities; his weight and blood pressure values are normal. However, the defendant tested

positive for COVID-19 on July 8, 2020. He subsequently tested negative for the virus on July 22 and tested negative again sometime before August 13, 2020.

Schotlz's medical records reflect that he suffered from mild COVID-19 symptoms. On July 13, 2020, he complained about feeling dizzy and suffered from dry mouth, but BOP physicians noted that he appeared well, alert, and oriented, and had no chills, fever, or night sweats. Physicians ordered an x-ray, and Scholtz was prescribed acetaminophen, an inhaler, doxycycline hyclate (an antibiotic), and prednisone (a corticosteroid used to treat breathing disorders). On August 13, 2020, he complained about headaches, dry cough, shortness of breath, and a sore throat. However, he never had a fever and his blood oxygen levels never dipped below normal.

On August 24, 2020, Schotlz still complained about shortness of breath, but his records indicated that he presented "no signs" of shortness of breath when seen by the provider, and the x-ray taken on August 18, 2020 indicated that his "lungs are clear with no pleural effusions." Physicians prescribed more acetaminophen and scheduled him for counseling about pain management, his plan of care, and access to care. Scholtz maintains that he "continues to suffer shortness of breath, difficulty breathing, debilitating headaches and other complications from the virus."

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe complications from a potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing *Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, Ctrs. for Disease Control and Prevention (June 25, 2020), https://bit.ly/2WBcB16).

Aside from a history of smoking, the defendant can point to no underlying medical conditions that increase his chances of a severe COVID-19 infection. The defendant states that he smoked marijuana regularly since the age of 14. The CDC recognizes that "[b]eing a former cigarette smoker may increase [the] risk of severe illness from COVID-19." *People with Certain Medical Conditions*, *supra*. However, the defendant never asserted that he smoked cigarettes in addition to marijuana, and his medical records do not reflect that he was a previous smoker or struggled with any of the effects incident to smoking.

The defendant contends that the fact that he previously contracted COVID-19 and still exhibits some symptoms satisfies the extraordinary and compelling threshold for compassionate release because "the virus can cause damage to the lungs, the heart and the brain, which increases the risk of long-term health problems." Reply, ECF No. 84, PageID.600. There is no definitive medical opinion on whether a person can re-contract COVID-19. *See Updated Isolation Guidance*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/media/releases/2020/s0814-updated-isolation-guidance.html ("Contrary to media reporting today, this science does not imply a person is immune to reinfection with . . . COVID-19, in the 3 months following infection."); *Clinical Questions about COVID-19*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html ("There is no firm evidence that the antibodies that develop in response to SARS-CoV-2 infection are protective. If these antibodies are protective, it's not known what antibody levels are needed to protect against reinfection."). However, as deeply unfortunate as it is that the defendant still struggles with COVID-19 symptoms, it does not appear that he ever suffered from severe complications from the virus. Scholz was never hospitalized; BOP physicians noted that he appeared well, alert, and oriented; and Scholtz's medical records never indicated that he had a fever or blood oxygen level deficits.

And although COVID-19 may cause long term physical damage to internal organs, an x-ray of his lungs indicated that they "are clear with no pleural effusions."

Nor has Scholtz demonstrated that the medical staff at FCI Jesup is incapable of treating his current ailments. The institution's physicians monitored Scholtz's health closely, met with him repeatedly, ordered x-rays, and prescribed various medications to treat his symptoms, including acetaminophen, an inhaler, antibiotics, and corticosteroids.

Scholtz maintains that he remains at a heightened risk of severe complications, citing a case from the Southern District of Texas, *United States v. Neba*, No. 15-00591. In that case, the defendant tested positive for COVID 19 on July 2, 2020, and was deemed recovered on August 4, 2020. On August 10, however, she was suddenly transported to a local hospital for treatment and died on August 25. However, that case is distinguishable in two respects. First, Neba was 56 years old. Second, she suffered from severe complications within two months of her diagnosis. In contrast, nearly three months have passed since Scholtz's diagnosis and he — thankfully — has not exhibited severe or life-threatening symptoms.

Another pertinent consideration is the probability that the defendant may be re-exposed to the coronavirus in his present situation, which in this case appears presently to be low. Recent reports indicate that the probability of infection at FCI Jesup, although previously high, has declined significantly, with the prison now having two active cases among inmates and 19 among staff. *COVID-19*, Bureau of Prisons (Oct. 15, 2020), https://www.bop.gov/coronavirus/.

The government's position that the defendant is at little or no risk is less reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *Wilson v. Williams*, 961 F.3d 829, 849 (6th Cir. 2020) ("The flaws inherent in the half-measures employed by the BOP are amplified

by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring). Nevertheless, the most recent reports suggest that the defendant's risk of infection now is as low as it would be in a home setting, given that the measures taken by BOP evidently have succeeded in halting the spread of the disease, despite the recent acceleration of the pandemic among the public at large, including in Michigan, where recent daily case counts are trending at consistently high levels (averaging about 1,500 new cases per day for the past week). *See Michigan Covid Map and Case Count*, N.Y. Times, https://nyti.ms/2Sojtfx (last visited, Oct. 4, 2020).

Considering the defendant's youth, health, lack of severe or life-threatening COVID-19 symptoms, and incarceration in a facility that has controlled the spread of the virus, the defendant failed to demonstrate an extraordinary and compelling reason for his compassionate release.

### III.

Scholtz has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's renewed motion for compassionate release (ECF No. 78) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: October 16, 2020